

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

COREY GILMORE,

    Plaintiff,

v.

KEVIN CARR, JAY DRESSLER, MARIO CANZIANI,

RANDY SCOTT, and CHRIS BUESGEN

    Defendants.

**20-cv-311-wmc**

## COMPLAINT WITH JURY DEMAND

### INTRODUCTION

This is a civil rights action filed by Corey Gilmore, a State Prisoner, for damages and injunctive relief under 42 U.S.C. 1983, alleging discrimination and irrational distinctions in access to a federal education program in violation of the Equal Protection Clause of the United States Constitution.

### JURISDICTION

1. This Court has jurisdiction over the plaintiff's claim of violation of federal constitutional rights under 42 U.S.C. 1331(1) and 1343.

2. The plaintiff, Corey Gilmore, is a State prisoner currently incarcerated at Jackson Correctional Institution in the State of Wisconsin. He was periodically incarcerated at Stanley Correctional Institution and Jackson Correctional Institution during the events described in this complaint.

3. The defendant Kevin Carr is the Secretary of the Wisconsin Department of Corrections. He is in charge of the supervision of defendants Jay Dressler, Mario Canziani, Randy Scott, and Chris Buesgen.

4. Defendant Jay Dressler was the education director at Stanley Correctional Institution during the events described in this complaint. He is sued in his individual capacity.

5. The defendant Mario Canziani was the Deputy Warden at Stanley Correctional Institution during the events described in this complaint. He was in charge of the supervision of Jay Dressler. He is sued in his individual capacity.

6. Defendant Randy Scott is the education director at Jackson Correctional Institution. He is sued in his individual capacity.

7. The defendant Chris Buesgen is the Deputy Warden at Jackson Correctional Institution. He is in charge of the supervision of Randy Scott. He is sued in his individual capacity.

8. All of the defendants have acted, and continue to act, under color of state law at all times relevant to this complaint.

### FACTS

9. In 2015, the Secretary of the U.S. Department of Education invited postsecondary educational institutions that participate in the student financial assistance programs authorized under title IV of the Higher Education Act of 1965, as amended (the HEA), to apply to participate in an institution base experiment under the Experimental Sites Initiative (ESI).

10. Under the experiment, participating institutions will provide federal Pell grant funding to otherwise eligible students who are incarcerated in federal and state penal institutions. The experiment is also known as the Second Chance Pell

Pilot Program.

11. The Second Chance Pell Pilot Program requires that participating educational institutions:

- Partner with one or more federal or state correctional facilities to offer one or more title IV HEA eligible academic programs to incarcerated students;
- Work with partnering correctional facilities to encourage interested students to submit a FAFSA;
- Only disburse Pell grant funding to otherwise eligible students who will eventually be eligible for release from the correctional facility, while giving priority to those who are likely to be released within five years of enrollment in the education program.

12. The U.S. Department of Education selected Milwaukee Area Technical College (MATC) to participate in the program.

13. The Office of Program Services is an agency of the Department of Corrections. It supervises the Department's educational and rehabilitative programs.

14. On August 4, 2017, the Office of Program Services issued a memo entitled, New Education Program Notice, Second Chance Pell Pilot Program. The eligibility criteria for the program included..."Within 5 years of MR or parole eligibility."

15. In 2018, Defendant Dressler gave notice to inmates at SCI, via teleprompter and institution memos, that if their mandatory release (MR) dates were not within 5 years they could not apply for the Second Chance Pell Pilot Program.

16. Defendant Dressler's actions prohibited Plaintiff from participating in the

Second Chance Pell Pilot Program because Plaintiff's MR was not within 5 years, although his parole eligibility date was within 5 years.

17. On June 27, 2018, Plaintiff submitted an appeal to the Defendant Canziani complaining that SCI's policy of prohibiting inmates with a MR greater than 5 years from applying for the Pell grant program was discriminatory.

18. On August 3, 2018, the Secretary of the Department of Corrections gave Defendant Dressler notice, via ICRS complaint decision that "inmates with five or more years are not excluded from the program."

19. In January of 2019, Defendant Dressler informed Plaintiff that SCI was not accepting any new applications for the Second Chance Pell Pilot Program, although SCI was accepting applications from the inmates who were previously enrolled.

20. Defendant Dressler's actions prohibited Plaintiff from participating in the Second Chance Pell Pilot Program.

21. On February 3, 2019, Defendant Canziani, after being informed of Defendant Dressler's actions through an appeal, failed to remedy the wrong.

22. In July of 2019, Plaintiff was transferred to Jackson Correctional Institution.

23. Plaintiff was provided with an application for the Second Chance Pell Pilot Program. He completed the application and returned it to the education department.

24. On August 1, 2019, Plaintiff was informed by JCI's education personnel Krause that "we have determined that you do not qualify for the Pell grant because of your long MR date. To qualify for the grant you must be within 2-5 years of your release."

25. On August 2, 2019, Defendant Scott, after being informed of Krause's actions through an appeal, failed to remedy the wrong. He determined, "We would not process you as a candidate at this time... based on your MR date..." Defendant Scott further intentionally misrepresented that MATC set a criteria that restricts the Pell grant to inmates who have "a release date between 2 and 5 years."

26. On August 12, 2019, Defendant Buesgen, after being informed of Scott's actions through an appeal, failed to remedy the wrong. He, like defendant Scott, intentionally misrepresented that MATC set a criteria that restricts the grant program to inmates who have a release date between 2 and 5 years.

27. On September 16, 2019, Plaintiff wrote to JCI's education department inquiring about the New Education Program Notice described in paragraph 14. Plaintiff asked when did the Within 5 years of MR or parole eligibility criteria change.

28. On September 18, 2019, JCI's education department Krause responded to Plaintiff's inquires stating, "Based on your parole eligibility date of (10/3/2019) you would not have sufficient time to complete."

29. On September 20, 2019, defendant Carr, via ICRS complaint decision, failed to remedy the wrong. He determined that it was reasonable not to select Plaintiff for the Pell grant because "other candidates met the criteria better." Defendant Carr, however, noted that "it is possible [Plaintiffs] parole defer of 12 months was overlooked."

30. On October 15, 2019, Plaintiff wrote to defendant Scott requesting to be enrolled into MATC's January semester and requesting to be transferred to another institution to participate in the program if space was not available at JCI.

31. On October 18, 2019, defendant Scott responded to Plaintiff stating, "your MR is still 2032. You are on the list and will be considered for future enrollment. However, as you have been told before, those meeting the minimum criteria will get in first, we are currently full for spring semester. I expect that this is the end. I will not answer further. If you inquire further about this again, you will receive a CR [conduct report] for disobeying orders."

### No Rational Basis not to consider Plaintiff's Parole Eligibility

32. Prison confined in Wisconsin are classified based on two distinctive sentence categories: indeterminate sentence and bifurcated sentence.

33. Defendants convicted of a serious felony committed on or after April 21, 1994 but before December 31, 1999, are sentenced under an indeterminate sentence, pursuant to Wis. Stat. 973.013. They are eligible for parole release after serving 25% of their sentence. They are entitled to a mandatory release after serving 2/3 of their sentence. The mandatory release date, however, is only a presumptive release date, and may be denied under certain statutory conditions.

34. Defendants convicted of a serious felony committed after December 31, 1999 are sentence under a bifurcated sentence, pursuant to Wis. Stat. 973.01. A bifurcated sentence is a sentence that consist of a term of confinement in prison followed by a term of extended supervision. Defendants sentence under a bifurcated sentence are required to serve the entire confinement portion of their sentence.

35. Plaintiff is being held under an indeterminate sentence. On April 15, 1996, he was sentenced to a prison term of 52 years, following a jury's finding of guilty of two counts of armed robbery, one count of aggravated battery, and one count of substantial battery.

36. On April 6, 2009, Plaintiff became eligible for parole and was given a 48 month parole deferral. On March 7, 2013, Plaintiff was once again considered for parole and was given a 24 month parole deferral. On August 22, 2016, Plaintiff was again considered for parole and was given a 24 month parole deferral. On August 9, 2018, Plaintiff was again considered for parole and was given a 12 month deferral. On October 2, 2019, Plaintiff was considered for parole and was given a 12 month parole deferral with an endorsement for minimum custody.

## Claims for Relief

37. Defendants Carr, Dressler, Canziani, Scott, and Buesgen are liable for discrimination because their actions in excluding Gilmore from the Second Chance Pell Pilot Program violated the Equal Protection Clause of the United States Constitution because there is no rational basis not to consider Gilmore's 12 month parole deferral, or to disregard the eligibility criteria as set forth by the U.S. Department of Education.

38. Defendant Scott is liable for Retaliation because (1) Plaintiff's action in requesting to be enrolled in the Second Chance Pell Pilot Program is an activity protected by the First Amendment; and (2) defendant Scott's action in threatening Plaintiff with a conduct report if Plaintiff continued to inquire about the program is an action that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) Plaintiff's request for enrollment into the program was the "motivating factor" in defendant's Scott's decisions to threaten Plaintiff with a conduct report.

## Damages

39. The U.S. Department of Education clearly set forth the eligibility criteria for the Second Chance Pell Pilot Program, the DOC's Office of Program Services

also clearly set forth the eligibility criteria for the Pell Grant program; therefore, the defendants Carr, Dressler, Canziani, Scott, and Buesgen acted with reckless indifference to Plaintiff's rights, and acted with malice, and a desire to injure when they excluded (or condoned the exclusion of) Plaintiff from the program.

40. The First Amendment clearly forbids prison officials from retaliating against prisoners for exercising their right to equal access to educational programs; therefore, defendant Scott acted with reckless indifference to Plaintiff's rights, and acted with malice, and a desire to injure when he threatened Plaintiff with a conduct report if Plaintiff further inquired about the Second Chance Pell Pilot Program.

41. Based upon an application for Federal Student Aid submitted in August of 2018, Plaintiff was eligible to receive Pell grant funding of up to $6095 for the 2018-2019 academic semesters.

42. As a direct result of the defendants Dressler's and Canziani's actions, Plaintiff was denied the statutory entitlement of up to $6095 in Pell grant funding for the 2018-2019 academic semesters.

43. Based upon an application for Federal Student Aid submitted in December of 2019, Plaintiff was eligible to receive Pell grant funding of up to $6095 for the 2019-2020 academic semesters.

44. As a direct result of the defendants Carr's, Scott's, and Buesgen's actions, Plaintiff was denied the statutory entitlement of up to $6095 in Pell grant funding for the 2019-2020 academic semesters.

WHEREFORE, Plaintiff requests that the court grant the following relief:

A. Issue a declaratory judgment stating that:

1. Plaintiff is not excluded from the Second Chance Pell

Pilot Program, even though he has a mandatory release date exceeds five years.

2. There is no rational basis not to consider Plaintiff's parole eligibility when determining priority for participation in the Second Chance Pell Program.

3. Defendants Carr, Dressler, Cianzani, Scott, and Buesgen violated Plaintiff's rights under the Fourteenth Amendment when they excluded Plaintiff from the Second Chance Pell Pilot Program.

B. Award compensatory damages in the following amounts:

1. $6095 jointly and severally against defendants Dressler and Canziani

2. $6095 jointly and severally against defendants Carr, Scott, and Buesgen.

C. Award punitive damages in the following amounts:

1. $50,000 each against the following defendants Dressler, Canziani, Carr, and Buesgen.

2. $100,000 each against defendant Scott.

Dated this 19, day of March 2020

*[signature]*

Corey Gilmore #25440

Jackson Correctional Institution

N6500 Haipek Road

Black River Falls, WI 53416