IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

COREY GILMORE,

                Plaintiff,                OPINION AND ORDER

  v.

                                          20-cv-311-wmc

KEVIN CARR, CHRIST BUESGEN,
MARIO CANZIANI, JAY DRESSLER, and
RANDY SCOTT,

                Defendants.

While *pro se* plaintiff Corey Gilmore was incarcerated at Stanley Correctional Institution ("Stanley") and Jackson Correctional Institution ("Jackson") his requests to participate in the "Second Chance Pell Pilot Program" were denied, which prompted him to sue under 42 U.S.C. § 1983 to challenge those denials. Somewhat reluctantly, the court nevertheless granted Gilmore leave to proceed on a Fourteenth Amendment class-of-one claim against the officials allegedly involved: defendants DOC Secretary Kevin Carr, Stanley Education Director Jay Dressler, Stanley Deputy Warden Mario Canziani, Jackson Education Director Randy Scott, and Jackson Deputy Warden Chris Buesgen. Defendants now seek summary judgment (dkt. #18), while plaintiff Gilmore seeks to add a new defendant to this lawsuit who was involved in in distributing flyers about the educational program (dkt. #30).

At the outset, the court will address Gilmore's motion to amend and deny it. Although this court will freely grant leave to amend "when justice so requires," consistent with Fed. R. Civ. P. 15(a)(2), "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies,

undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Gilmore waited to file his motion to amend until his response to defendants' motion for summary judgment, without explaining why he waited to do so. Moreover, adding a new defendant at this stage would prejudice defendants, who have been diligently litigating this case. Most importantly, even aside from the obvious prejudice to defendants, for the reasons explained further below in more detail, any amendment would be futile because a class-of-one claim is not available to plaintiff in this context, and even if it were, his would fail on the merits. Therefore, the court will deny Gilmore's motion, grant defendants' motion for summary judgment, and enter judgment in their favor.

## UNDISPUTED FACTS[1]

### A. The DOC's Second Chance Pell Pilot Program

Federal Pell grants provide needs-based financial support to certain low-income students to encourage their pursuit of postsecondary education. Specifically, the Secretary of the United States Department of Education invited post-secondary educational institutions to participate in an experiment referred to as the "Second Chance Pell Pilot Program." Under this program and Title IV of the Higher Education Act of 1965, participating educational institutions would provide Pell grant funding to eligible students incarcerated in federal and state penal institutions. In coordination with the DOC,

---

[1] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the defendants' proposed findings of fact, which were undisputed, as well as plaintiff's verified complaint. *See Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996).

2

Milwaukee Area Technical College ("MATC") participated in this program after the Department of Education established criteria or eligibility requirements. Relevant to Gilmore's claims, the Department of Education determined that funding would be made available to incarcerated individuals who were eligible for release back into the community within five years of their enrollment in the program.

Early in the program, there was understandable confusion about how to determine whether an inmate met this five-year requirement. Initially, in August 2017 a communication from the Second Chance program stated that eligibility was for those within two to five years of mandatory release or parole eligibility. Later communications about the program further clarified that eligibility was just for those within five years of mandatory release, although inmates with longer than five years until their mandatory release could still apply to the program. The clarification was issued in recognition that an inmate's mandatory release date is static, whereas the parole date tended to be dynamic based on multiple factors. For example, Gilmore's mandatory release date is May 25, 2032, but he first became eligible for parole in April 2009. Having received 48-month, 24-month, and multiple 12-month deferrals, his parole eligibility date changed multiple times. As a result, the mandatory release date came to be viewed as a better, more predictable, estimate of an inmate's likely release for purposes of the Second Chance program.

B. **Stanley Programming**

Stanley's inmate population was between 1,500 and 1,600 during the period relevant to Gilmore's claim. Given its size, Stanley's education department staff had to prioritize enrollment in programming based on when inmates were set to be released. In

particular, Stanley had a limited number of computers compatible with the Second Chance program, and few staff to supervisor the students. Due to the limitations, defendant Dressler estimates that Stanley had six or fewer students enrolled at a time. Dressler also attests that technical problems with MATC's computer program was a substantial problem as well. As a result, Stanley stopped enrolling new students in the program in 2019.

Regardless, in 2018, defendant Dressler notified inmates that if their mandatory release date was not within five years, they could not apply for the Second Chance Pell Pilot Program. Apparently, Dressler did *not* notify inmates that they could apply if they were within five years of parole eligibility, which appears consistent with later communications from the program. Still, Gilmore alleges that because of Dressler's incomplete announcement, Gilmore was prevented from participating in the program, even though his parole eligibility date was within five years at that time.

On July 27, 2018, Gilmore complained to defendant Canziani that Stanley's policy prohibiting inmates with a mandatory release date greater than five years away was unfairly discriminatory. Gilmore does not say how Canziani handled the appeal. On August 3, 2018, defendant Carr informed Gilmore that "inmates with five or more years are not excluded from the program," suggesting that Gilmore should be able to apply. (Compl. (dkt. #1) 18.)[2] However, six months later, January of 2019, Dressler informed Gilmore that Stanley was not accepting new applications for the Second Chance program, even though Stanley would be accepting applications from inmates who had been previously

---

[2] The question of whether Gilmore exhausted his administrative remedies with respect to his inability to participate in the program is not before the court.

4

enrolled in the program. Thus, Gilmore was unable to participate in the program at that point, and it appears Gilmore then filed another complaint about his eligibility. On February 3, 2019, Canziani declined to take corrective action with respect to Gilmore's complaint.

### C. Jackson Programming

Gilmore was later transferred to Jackson. Unfortunately, Jackson consistently had more inmates interested in participating in programming than was available. Plus, by the time Gilmore arrived at Jackson in June of 2019, the enrollment window for the fall semester had passed. As a result, defendant Scott told Gilmore the program was full, and that there were many candidates on a waiting list ahead of him who met more of the eligibility criteria, including inmates with earlier mandatory release dates. Both defendants Buesgen and Carr failed to take corrective action. Carr determined that it was reasonable not to select Gilmore for the Second Change program because other candidates met the criteria better. Nonetheless, defendant Scott offered Gilmore a different educational opportunity, which he pursued.

Because MATC offered no summer semester, Gilmore's next chance to enroll in the Second Chance program was in September 2020. At that point, Gilmore was set to move to a minimum-security institution, meaning that if he wanted to participate Jackson's program his transfer would have been placed on hold. Defendant Scott attests that he spoke with Gilmore about this possibility, but Gilmore indicated that he did not want to be held at Jackson for programming.

Still not moved by on October 15, 2019, Gilmore wrote to defendant Scott again,

requesting to be enrolled in MATC's January semester. He also requested to be transferred to another institution to participate in the program if there was not space at Jackson. On October 18, 2019, defendant Scott responded:

> [Y]our [mandatory release] is still 2032. You are on the list and will be considered for future enrollment. However, as you have been told before, those meeting the minimum criteria will get in first, we are currently full for spring semester. I expect that this is the end. I will not answer further. If you inquire further about this again, you will receive a [conduct report] for disobeying orders.

(Compl. (dkt. #1) ¶ 31.)

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there is any genuine issue as to any material fact, the court cannot grant summary judgment. *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id*. at 255.

As noted, plaintiff was granted leave to proceed against defendants on a "class of one" discrimination claim under the Fourteenth Amendment. To succeed on this claim in the Seventh Circuit, plaintiff must "prove that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in

6

treatment.'" *Glover v. Dickey*, 668 Fed. Appx. 158, 160 (7th Cir. 2016) (quoting *D.B. ex rel. Kurtis B. Kopp*, 725 F.3d 681, 685-86 (7th Cir. 2013)).  Once a defendant provides a rational basis for the challenged action, "that will be the end of the matter -- animus or no." *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014).

Regardless of the burden, defendants correctly point out that there is a threshold question as to whether a Fourteenth Amendment "class of one" equal protection claim is viable with respect to his access to the Second Chance program, given the Supreme Court's holding in *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008), that government employees may not bring class-of-one equal protection claims based on employment decisions, since such decisions are "based on a vast array of subjective, individualized assessments." *Id.* at 603-04.  Further, this same principle has been applied by the Seventh Circuit, the Eastern District of Wisconsin, and this court to claims involving discretionary decisions of prison officials challenged by inmates.  *E.g.*, *Clark v. Reed*, 772 F. App'x 353, 354-55 (7th Cir. June 28, 2019) (applying *Engquist* to the prisoner-employment context); *Adams v. Meloy*, 287 F. App'x 531, 534 (7th Cir. July 22, 2008) (applying *Engquist* to a parole board decision); *Nigl v. Litscher*, 378 F. Supp. 3d 729, 740 n.8 (E.D. Wis. 2019) ("Class-of-one equal protection claims are very difficult, if not impossible, to prove in the context of an official's discretionary decision-making."), *aff'd*, 940 F.3d 329 (7th Cir. 2019), *cert. denied*, 140 S. Ct. 2772 (2020); *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015) (prison disciplinary decisions not subject to equal protection challenge).

7

Here, the decisions by Stanley and Jackson officials related to which inmates could participate in the Second Chance Program required consideration of numerous factors. To start, it is undisputed that both institutions had far more interested and qualified inmates than available spots in the program, which meant that the prison officials had to use discretion to determine which inmates were most qualified to participate. Certainly, the mandatory release date, and for some time at least the parole eligibility dates, were threshold eligibility factors, and prison officials otherwise were not *required* to admit even those inmates who qualified based on that criterion.

Gilmore disputes whether prison officials had discretion, citing a snippet of the policy governing program enrollment within the DOC, Wis. Admin Code DOC § 302.14, which provides that "inmates shall be considered for program enrollment" if four criteria are met. However, the word "considered" means that the responsible officials may, *not must*, enter inmates into the program. In any event, one of the four criteria is whether there is "space available in the program." *Id.* § 302.14(1)(c). Because it was undisputed that there was *not* space in the program for all inmates who were interested or qualified, there is no dispute of fact as to whether decisions about Second Chance program participation were discretionary. Because those decisions were discretionary when Gilmore was participating, his class-of-one claim is not cognizable.

Although defendants are entitled to summary judgment for this reason alone, plaintiff's claim also fails on the merits. Gilmore has not come forward with evidence that any of the defendants denied his requests to participate in the program without a rational basis, much less with any animus against him. Instead, Gilmore argues that he was treated

8

less fairly than inmates sentenced under Truth in Sentencing, who *only* have a mandatory release date, which generally is shorter than inmates who have *both* parole eligibility and mandatory release dates. However, Gilmore provides nothing in support of that assertion, much less a meaningful comparison between himself and other inmates sentenced under Truth in Sentencing.

Finally, even if using just mandatory release dates as a criterion resulted in inmates sentenced under Truth in Sentencing being qualified earlier, Gilmore has *not* shown that the difference in treatment is irrational or borne from animus toward him. To the contrary, it is undisputed that parole eligibility dates were used as a criterion for only a brief period, and there was a good reason to stop using it: parole eligibility dates changed while mandatory release dates did not. Accordingly, there was uncertainty about eligibility for inmates who qualified to participate in the program based on their parole eligibility. Moreover, the use of just the mandatory release date alone was perfectly rational: the criterion of two-to-five years from mandatory release helped ensure that inmates in the Second Chance program had time to complete their studies and could use their education when released back into the community. Gilmore has come forward with no evidence suggesting that rationale is either inaccurate or improperly. Therefore, defendants are entitled to summary judgment on the merits of Gilmore's claim as well.[3]

---

[3] Given the court's rulings above, it need not resolve defendants' alternative qualified immunity argument.

ORDER

IT IS ORDERED that:

1. Plaintiff Corey Gilmore's motion to add defendant (dkt. #30) is DENIED.

2. Defendants' motion for summary judgment (dkt. #18) is GRANTED.

3. Defendants' motion to stay (dkt. #32) is DENIED as moot.

4. The clerk of court is directed to enter final judgment and close this case.

Entered this 2nd day of March, 2023.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge